```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - x
                               :
UNITED STATES OF AMERICA,      :
                               :
         - v. -                :
                               :
GERMAN CUADRADO,               :
   a/k/a "Geraldo,"            :        07 Cr. 387 (CLB)
JORGE FLORES,                  :
PLUTARCO ANGULO-AGUIRRE        :
   a/k/a "Matatan," and        :
RAFAEL RODRIGUEZ,              :
   a/k/a "Dance,"              :
                               :
              Defendants.      :
- - - - - - - - - - - - - - - x
```

## MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO DEFENDANTS' PRETRIAL MOTIONS

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Nola B. Heller
Assistant United States Attorney
      -Of Counsel-

## TABLE OF CONTENTS

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . .  1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . .  2

    A.  Offense Conduct . . . . . . . . . . . . . . . . .  2

    B.  Post-Indictment Discovery. . . . . . . . . . . . .3

ARGUMENT

    I.  PLUTARCO ANGULO-AGUIRRE'S REQUEST FOR A BILL OF
        PARTICULARS SHOULD BE DENIED . . . . . . . . . . . .5

    II. PLUTARCO ANGULO-AGUIRRE'S DISCOVERY REQUESTS SHOULD BE
        DENIED. . . . . . . . . . . . . . . . . . . . . . 8

        A.   Brady Material . . . . . . . . . . . . . . . .10

        B.   Giglio and Jencks Act Material. . . . . . . . 12

        C.   Witness List . . . . . . . . . . . . . . . . .15

        D.   Rule 404(b) Material . . . . . . . . . . . . .16

        E.   Statements Pursuant to Fed. R. Evid. 801(d)(2). 18

        F.   Identification Procedures. . . . . . . . . . .20

        G.   Other Discovery Requests . . . . . . . . . . .22

    III. PLUTARCO ANGULO-AGUIRRE'S MOTION FOR DISCLOSURE OF
         INFORMANT-RELATED INFORMATION SHOULD BE DENIED . . . 22

    IV. PLUTARCO ANGULO-AGUIRRE'S MOTION TO PRECLUDE THE
        GOVERNMENT FROM IMPEACHING HIS CREDIBILITY
        WITH EVIDENCE OF PRIOR CONVICTIONS
        SHOULD BE DENIED . . . . . . . . . . . . . . . . 25

    V.  PLUTARCO ANGULO-AGUIRRE'S MOTION TO COMPEL
        PRESERVATION OF LAW ENFORCEMENT
        NOTES SHOULD BE DENIED AS MOOT . . . . . . . . . 26

    VI. RODRIGUEZ'S MOTION TO SUPPRESS PHYSICAL EVIDENCE
        REQUIRES A HEARING, ASSUMING RODRIGUEZ SIGNS HIS
        AFFIDAVIT . . . . . . . . . . . . . . . . . . . .27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . 31

## PRELIMINARY STATEMENT

The United States of America respectfully submits this memorandum of law in opposition to the pretrial motions of defendants Plutarco Angulo-Aguirre and Rafael Rodriguez.

Defendant Plutarco Angulo-Aguirre asks this Court for: (1) an order for a Bill of Particulars; (2) an order directing the Government to produce extraordinary additional and/or early discovery, including, inter alia, Giglio, Brady, and Jencks Act material, as well as early disclosure of its witness list and 404(b) material; (3) an order requiring disclosure of the identity of Government informants; (4) an order precluding the Government from impeaching his credibility with evidence of prior convictions or bad acts; (5) an order requiring the preservation of notes and memoranda prepared by law enforcement officers; and (6) an order permitting him to file further motions and to join in the motions of his co-defendant.

Defendant Rafael Rodriguez asks this Court for an order suppressing physical evidence seized on January 3, 2007, or, alternatively, a suppression hearing.

Defendant Angulo-Aguirre's motions are without merit or premature and, for the reasons set forth below, should be denied. The Government consents to an evidentiary hearing regarding the defendant Rodriguez's motion to suppress evidence seized on

1

January 3, 2007, assuming Rodriguez signs the affidavit attached
to that motion before the date of the hearing.

**BACKGROUND**

## A.   Offense Conduct

Defendants German Cuadrado, Jorge Flores, Plutarco
Angulo-Aguirre, and Rafael Rodriguez have been charged in a four-
count Indictment.  Count One charges all four defendants with
conspiring to violate Section 1201(a) of Title 18, United States
Code, by kidnapping two individuals in or about Blauvelt, New
York, on September 13, 2006, in violation of Title 18, United
States Code, Section 1201(c).  Count Two charges all four
defendants with kidnapping two individuals in or about Blauvelt,
New York, on September 13, 2006, and transporting them to New
Jersey, in violation of Title 18, United States Code, Sections
1201(a) and 2.  Count Three charges all four defendants with
conspiring to violate Section 1951(a) of Title 18, United States
Code, by committing armed robbery of two truck drivers of a
truckload of perfume on or about September 13, 2006 in or about
Blauvelt, New York, and thereby obstructing interstate commerce,
in violation of Title 18, United States Code, Section 1951(a).
Count Four charges all four defendants with committing armed
robbery of two truck drivers of a truckload of perfume on or
about September 13, 2006 in or about Blauvelt, New York, and

2

thereby obstructing interstate commerce, in violation of Title 18, United States Code, Section 1951(a) and 2.

## B.    Post-Indictment Discovery

On or about July 12, 2007, the Government produced discovery to each of the defendants.  Defendant Angulo-Aguirre received from the Government: the Indictment; telephone records for September 2006; bills of lading for the truck stolen on September 13, 2006; global positioning satellite results from September 2006; results of fingerprint analysis; copies of a photo array from which four individuals identified Angulo-Aguirre; copies of personal identification documents taken from Angulo-Aguirre upon his arrest on or about June 22, 2007.  The Government also made available for inspection photographs taken on or about September 13 and 14, 2007.  Additionally, in its July 12, 2007 letter, the Government included a paragraph containing information the Government disclosed pursuant to its obligations under Brady v. Maryland, 373 U.S. 83 (1963), and notified the defendant that the Government may introduce evidence of Angulo-Aguirre's uncharged crimes pursuant to Federal Rule of Evidence 404(b), specifically, his involvement in the thefts of other trucks.

On or about July 18, 2007, the Government provided additional discovery to Angulo-Aguirre, specifically, a copy of Angulo-Aguirre's criminal history report, along with two brief

3

statements Angulo-Aguirre made after his arrest on or about June
22, 2007.

On or about July 12, 2007, the Government produced to
defendant Rodriguez: the Indictment; a copy of the defendant's
criminal history report; telephone records for September 2006;
bills of lading for the truck stolen on September 13, 2006;
global positioning satellite results from September 2006; results
of fingerprint analysis; copies of a photo array from which three
individuals identified Rodriguez; a photograph of items seized
from the trunk of the car Rodriguez was in when he was arrested
on January 3, 2007[1]; copies of personal identification documents
taken from Rodriguez upon his arrest on or about January 3, 2007;
and copies of the booking report conducted pursuant to the
January 3, 2007 arrest.  The Government also made available for
inspection photographs taken on or about September 13 and 14,
2007.  Additionally, in its July 12, 2007 letter, the Government
included a paragraph containing information the Government
disclosed pursuant to its obligations under Brady v. Maryland,
373 U.S. 83, and notified the defendant that the Government may
introduce evidence of Rodriguez's uncharged crimes pursuant to
Federal Rule of Evidence 404(b), specifically, his involvement in
the thefts of other trucks.

_____

[1] Rodriguez was arrested on January 3, 2007, not January 4,
2007, as the Government stated in its July 12, 2007 letter.

4

**ARGUMENT**

## I.    PLUTARCO ANGULO-AGUIRRE'S REQUEST FOR A BILL OF PARTICULARS SHOULD BE DENIED

Angulo-Aguirre seeks a bill of particulars.

See Angulo-Aguirre Pretrial Mot. at 6-7. Specifically, Angulo-Aguirre requests, among other things, the identity of named and unnamed co-conspirators, the dates the conspiracy began and ended, the dates on which each member joined the conspiracy, the dates and locations of all meetings or conversations relating to the conspiracy in which they are alleged to have participated, descriptions of all unspecified overt acts, and the date on which the conspiracy ended.  His request should be denied.

It is well established that the proper scope and function of a bill of particulars is to provide sufficient information about the nature of the charge to enable a defendant to prepare for trial, to avoid unfair surprise, and to preclude a second prosecution for the same offense.  Fed. R. Crim. P. 7(f); United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990); United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987).  "A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused."  Torres, 901 F.2d at 234 (internal quotation marks omitted).

If the information the defendant seeks "is provided in the indictment or in some acceptable alternate form," such as

5

discovery, no bill of particulars is required. Bortnovsky, 820
F.2d at 572; United States v. Morales, 280 F. Supp. 2d 262, 274
(S.D.N.Y. 2003). In other words, the defense cannot use a bill
of particulars as a general investigative tool, United States v.
Salazar, 485 F.2d 1272, 1277-78 (2d Cir. 1973), or as a device to
compel disclosure of the Government's evidence prior to trial.
See Triana-Mateus, No. 98 Cr. 958 (SWK), 2002 WL 562649, at *5
(S.D.N.Y. Apr. 15, 2002) (citing United States v. Gottlieb, 493
F.2d 987, 994 (2d Cir. 1974)). "The Government is not required
to disclose the manner in which it will attempt to prove the
charges, nor the means by which the crimes charged were
committed." Id. Therefore, "'the Government is not required to
provide information that would, in effect, give the defendant a
preview of the Government's case before trial.'" Triana-Mateus,
2002 WL 562649, at *5 (quoting United States v. Conley, No. 00
Cr. 0816 (DAB), 2002 WL 252766, at *4 (S.D.N.Y. Feb. 21, 2002)).

         Under the relevant legal standard, the Government is
not required to (a) "particularize all of its evidence," United
States v. Cephas, 937 F.2d 816, 834 (2d Cir. 1991); (b) disclose
the precise manner in which the crimes charged in the indictment
were committed, see Torres, 901 F.3d at 233-34 (demands for
"whens" and "wheres" and "by whoms" within charged conspiracy are
improper attempts at general pre-trial discovery); or (c) provide
the defendant with a preview of the Government's case or legal

theory.  United States v. Muyet, 945 F. Supp. 586, 588-589
(S.D.N.Y. 1996).  The ultimate test is whether the information
sought is necessary, not whether it is helpful.  See United
States v. Trippe, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001);
Conley, 2002 WL 252766, at *4.

          In this case, there is no danger that Angulo-Aguirre
will suffer from unfair surprise at trial.  He has received ample
information about the crimes charged in the Indictment.  Not only
has the Government already produced discovery, which included
detailed information regarding the circumstances of the theft of
the truck at issue, but also, the charges itself are pled with
specificity.  The indictment details where and when the truck was
robbed; the contents of the truck; the fact that the robbery was
armed; the location where the kidnapped victims were transported;
and the names of the participants involved in the hijacking and
kidnapping.  Additionally, the kidnapping conspiracy count
enumerates one overt act that Angulo-Aguirre is accused of
committing in furtherance of that conspiracy.

          Despite the detailed allegations and the discovery
provided by the Government, Angulo-Aguirre seeks further
information.  His request for a bill of particulars is a
transparent attempt to obtain additional, detailed discovery
about the charged conspiracies, and he is not entitled to it.
See Torres, 901 F.3d at 233-34; United States v. Bin Laden, 92 F.

                               7

Supp. 2d 225, 242 (S.D.N.Y. 2000) ("[R]equests, such as those
made by the Defendants here, for particulars as to when, where,
how, and with whom each individual defendant joined an alleged
conspiracy have 'almost uniformly been denied.'" (quoting United
States v. Wilson, 565 F. Supp. at 1438)); United States v. Feola,
651 F. Supp. 1068, 1132-33 (S.D.N.Y. 1987) ("Details as to how
and when the conspiracy was formed, or when each participant
entered it, need not be revealed before trial."). Taken
together, the materials already provided give Angulo-Aguirre
ample opportunity to prepare his defense and leave no possibility
of unfair surprise. Accordingly, the defendant's attempt to
obtain unauthorized discovery through a bill of particulars
should be denied.

## II. PLUTARCO ANGULO-AGUIRRE'S DISCOVERY REQUESTS SHOULD BE DENIED

Defendant Plutarco Angulo-Aguirre has made a
boilerplate motion setting forth a litany of extraordinary
requests for additional discovery. See Angulo-Aguirre Pretrial
Mot. at 8-12. Because these requests are either moot, premature,
or not required by any statute or the Federal Rules of Criminal
Procedure, the Government respectfully submits that each of the
defendants' respective discovery requests be summarily denied.

Before addressing, in greater detail, the defendant's
demands for Brady, Giglio, Jencks Act, and 404(b) material, as
well as other information relating to witnesses at trial and

8

other general discovery requests, the Government notes the

following.  The Government has, as described in the Background

Section of this Memorandum, already produced discovery to Angulo-

Aguirre pursuant to Federal Rule of Criminal Procedure 16.[2]

With respect to Angulo-Aguirre's broad demand regarding

statements that either he or his co-defendants may have made in

response to interrogation by government agents, the Government

notes that to the extent that Angulo-Aguirre is requesting his

own statements, they have already been produced.  This demand is

accordingly moot.  To the extent that Angulo-Aguirre is

requesting disclosure of such statements made by his co-

defendants, he is not entitled to them.

To the extent that Angulo-Aguirre is making any request

for either (1) information related to oral statements he or his

co-defendants have made where such statements were not given in

response to interrogation by a person that defendant knew was a

government agent; or (2) records/other information regarding

statements his co-defendants may have made, Angulo-Aguirre's

request has no basis in law and should accordingly be denied.

See, e.g., Fed. R. Crim. P. 16(a)(1)(A) and (B); In re United

States, 834 F.2d 283, 286-87 (2d Cir. 1987) ("[A]llowing a

_____

[2] Of course, the Government recognizes that its obligation
to provide discovery is of a continuing nature, and the
Government will, if it obtains additional evidence, supplement
its production of material required by Rule 16(a)(1)(A) and any
other provision of Rule 16, for that matter.

9

defendant to discover the statement of a coconspirator as his own
would transmogrify the coconspirator into the person of the
defendant himself . . . . [A] defendant who fears further
disclosure by a coconspirator could take whatever unlawful steps
are necessary to insure that his alter ego is silenced."). The
Government notes, however, that should it call any witness at
trial whose statements about Angulo-Aguirre have been recorded,
the Government will produce the records of such statements in
accordance with its obligations under the Jencks Act.[3]

### A.   Brady Material

Angulo-Aguirre requests that the Government disclose
exculpatory material pursuant to Brady v. Maryland, 373 U.S. at
87.  See Angulo-Aguirre Pretrial Mot. 10, 17.  Pursuant to the
Due Process Clause of the United States Constitution, the
Government has a duty to disclose favorable evidence to the
accused where such evidence is "material" either to guilt or to
punishment.  See Brady, 373 U.S. at 87.  Favorable evidence
includes evidence that tends to exculpate the accused, see id.,
as well as evidence that is useful to impeach the credibility of
a government witness.  See Giglio v. United States, 405 U.S. 150,
154 (1972).  As the Court of Appeals has explained, Brady and

---

[3] To the extent that Angulo-Aguirre seeks the identity of
all Government agents present at the time any defendant made any
oral statements, however, the request has no basis in law and
should be denied.  United States v. Birkett, No. 99 Cr. 338
(RWS), 1999 WL 689992, at *3 (S.D.N.Y. Sept. 2, 1999).

10

<u>Giglio</u> material must be provided by the Government "in time for its effective use at trial." <u>In re United States</u> (<u>United States v. Coppa</u>), 267 F.3d 132, 146 (2d Cir. 2001); <u>see</u> <u>also</u> <u>id.</u> ("the prosecutor must disclose . . . exculpatory and impeachment information no later than the point at which a reasonable probability will exist that the outcome would have been different if an earlier disclosure had been made").

        As set forth above, the Government disclosed material pursuant to its obligations under <u>Brady v. Maryland</u> in its July 12, 2007 letter to Angulo-Aguirre.  To date, the Government has produced all material of which it is aware that is arguably <u>Brady</u> material.  The Government is mindful of its continuing obligation to disclose <u>Brady</u> material, and will produce any additional such material as soon as the Government learns of its existence.

        Because the Government has made a good-faith representation to the Court and defense counsel that it recognizes and has complied with its disclosure obligations under <u>Brady</u>, Angulo-Aguirre's request should be denied.  <u>See, e.g.</u>, <u>United States v. Gallo</u>, No. 98 Cr. 338 (JGK), 1999 WL 9848, at *8 (S.D.N.Y. Jan. 11, 1999) (denying defendant's motion to compel production of <u>Brady</u> material based on Government's representations that "it is aware of its obligations under <u>Brady</u> . . . and will produce any <u>Brady</u> material to the defense well before trial"); <u>United States v. Yu</u>, No. 97 CR 102 (SJ), 1998 WL

11

57079, at *4-*5 (E.D.N.Y. Feb. 5, 1998) (denying defense request
that Government provide early disclosure of Brady material
because Government acknowledged its continuing obligation to
provide exculpatory material upon its discovery and assured that
it would comply with that obligation); United States v. Perez,
940 F. Supp. 540, 553 (S.D.N.Y. 1996) (same).

### B.    *Giglio* and Jencks Act Material

Angulo-Aguirre also seeks advanced disclosure of prior
statements of the Government's witnesses, as well as various
materials and information in the Government's possession that may
be used to impeach or cross-examine such witnesses (including,
inter alia, agreements, criminal history records of witnesses,
information as to any promises, threats, or inducements made to
potential witnesses, physical or mental disabilities, and lie
detector reports).   See Angulo-Aguirre Pretrial Mot. at 10-12,
18-20.  There is no basis for these requests.  As a threshold
matter, all such requests are premature, for the Government has
not yet identified which witnesses it intends to call at trial.
That determination will depend upon a number of considerations,
including which defendants proceed to trial.  In any event, the
law is clear that the Government is under no obligation under the
Jencks Act, 18 U.S.C. § 3500 et seq., to produce prior statements
of its witnesses until after each has testified on direct exami-
nation.  The Jencks Act provides in pertinent part:

12

> In any criminal prosecution brought by the
> United States, no statement or report in the
> possession of the United States which was
> made by a Government witness or prospective
> Government witness (other than the defendant)
> shall be the subject of subpoena, discovery,
> or inspection until said witness has
> testified on direct examination in the trial
> of the case.

18 U.S.C. § 3500.

Courts in this Circuit have consistently held that the district court lacks the power to mandate early production of Jencks material.  See, e.g., United States ex rel. Lucas v. Regan, 503 F.2d 1, 3 n.1 (2d Cir. 1974); In re United States, 834 F.2d at 287; United States v. Ortiz-Montoya, No. 93 Cr. 0050 (RWS), 1995 WL 37841, at *1 (S.D.N.Y. Jan. 31, 1995); United States v. McGuinness, 764 F. Supp. 888, 896 (S.D.N.Y. 1991).

Similarly, courts in this Circuit have repeatedly refused to compel disclosure of impeachment or Giglio material (which encompasses much of the defendant's requests) well in advance of trial.  In United States v. Coppa, the Second Circuit held that the Government is not required to produce Giglio material until it produces "3500 material" pursuant to the Jencks Act, so long as the Government provides the Giglio material in time for its effective use at trial.  267 F.3d at 145-46; see also United States v. Nixon, 418 U.S. 683, 701 (1974) ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of

13

trial."); United States v. Greyling, 00 Cr. 631 (RCC), 2002 WL
424655, at *2 (S.D.N.Y. Mar. 18, 2002) (production of Giglio
material by the Wednesday before the week in which a witness
will testify is appropriate); Gallo, 1999 WL 9848, at *7-*8
(denying defendants' motions to require the early production of
Giglio and 3500 material based on Government's representations
that it would provide the information sufficiently in advance of
each witness's testimony to allow adequate time to prepare for
cross-examination); United States v. Mejia, No. 98 Cr. 4, 1998
WL 456257, at *1 (S.D.N.Y. Aug. 5, 1998) (denying defendant's
motion to compel all impeachment material under Giglio based on
the Government's representations that it would make such
information available at the time that it provides 3500
material).

          However, in order to avoid any adjournment or delay in
the trial which might conceivably occur if 3500 and Giglio
material were not produced until after the Government's
witnesses have testified, the Government will adhere to its
customary practice of producing impeachment material at the same
time as Jencks Act material, i.e. the day before the
corresponding witness will testify, or, if additional time is
reasonably required to review such material, sufficiently in
advance of the witness's testimony so as to avoid any delay at
trial.   This practice will allow defense counsel adequate time

                              14

to prepare for cross-examination of Government witnesses as they come up at trial.

### C. **Witness List**

Angulo-Aguirre also requests that the Government provide a list of its possible trial witnesses. See Angulo-Aguirre Pretrial Mot. at 18-19. The request should be denied because it has no foundation in law.

As the Second Circuit has explained, "Federal Rule Criminal Procedure 16 does not require the Government to furnish the names and addresses of its witnesses." United States v. Bejasa, 904 F.2d 137, 139 (2d Cir. 1990). Nor does any other rule or statute obligate the Government to disclose the identity of its prospective witnesses. See United States v. Alessi, 638 F.2d 466, 481 (2d Cir. 1980) ("the prosecution [is] under no obligation to give [the defendant] advance warning of the witnesses who would testify against him" (citing Weatherford v. Bursey, 429 U.S. 545, 559 (1977))). Moreover, United States v. Cannone, 528 F.2d 296 (2d Cir. 1975), makes clear that a defendant is entitled to disclosure of the Government's witnesses only if he makes "a specific showing that the disclosure [is] both material to the preparation of his defense and reasonable in light of the circumstances surrounding his case." Id. at 301. A mere "abstract conclusory claim that such disclosure [is] necessary to [the] proper preparation for trial"

15

is insufficient.  Id. at 301-02 (abuse of discretion for the district court to grant defense motion for a witness list supported by only general statement of need); see also United States v. Biaggi, 675 F. Supp. 790, 810-11 (S.D.N.Y. 1987); United States v. Feola, 651 F. Supp. at 1138.

The law is clear that, "absent 'some particularized showing of need,' the defendant is not entitled to lists of government witnesses . . . ." United States v. Wilson, 565 F. Supp. 1416, 1438 (S.D.N.Y. 1983) (Weinfeld, J.), overruled on other grounds, United States v. Reed, 773 F.2d 477 (2d Cir. 1985).  Because this "heavy burden," United States v. Alvalle, No. 85 Cr. 419 (JFK), 1985 WL 2348, at *1 (S.D.N.Y. Aug. 22, 1985), rarely can be met, requests for witness lists routinely are denied in this District.  See, e.g., United States v. Ahmad, 992 F. Supp. 682, 685 (S.D.N.Y. 1998); United States v. Perez, 940 F. Supp. 540, 552 (S.D.N.Y. 1996).

Here, Angulo-Aguirre has not demonstrated a particularized need for a witness list beyond simply asserting that such information is necessary to prepare for cross-examination.  Consequently, his request should be denied.

**D.    Rule 404(b) Material**

Angulo-Aguirre requests an order directing the Government to disclose at this time or on a date certain well in advance of trial evidence that it will seek to admit at trial

16

pursuant to Federal Rule of Evidence 404(b). <u>See</u> Angulo-Aguirre
Pretrial Mot. at 8, 10. This request should be denied.

        First, the Government is cognizant of the provisions
for pretrial notice in Rule 404(b), and will provide such Rule
404(b) notice prior to trial. Indeed, in its July 12, 2007
discovery letter, the Government informed Angulo-Aguirre that it
may introduce evidence pursuant to Rule 404(b) regarding Angulo-
Aguirre's participation in the thefts of additional trucks.
This notice was provided well in advance of when the Government
was obligated to do so, and no further notice is required at
this time.

        Rule 404(b) provides no strict time deadline for
notification. The rule merely requires that the Government
provide "<u>reasonable</u> notice in advance of trial, or during trial,
if the court excuses pretrial notice on good cause shown" of its
intent to use evidence of other crimes, wrongs, and bad acts.
Fed. R. Evid. 404(b) (emphasis added). Ten days' notice has
routinely been held to be adequate under the notice provision of
Rule 404(b). <u>See</u> <u>United States v. Valenti</u>, 60 F.3d 941 (2d Cir.
1995) (in embezzlement case, four days' notice of evidence of
prior wire transfers showing defendant's knowledge sufficient
notice of other acts evidence under Rule 404(b)); <u>United States
v. Triana-Mateus</u>, 2002 WL 562649, at *6 (directing Government to
provide 404(b) notice two weeks before trial). Requiring

                                17

substantially more than ten days' notice would be inappropriate, however, because the evidence that the Government wishes to offer may well change as the proof and possible defenses crystallize.  See United States v. Matos-Peralta, 691 F. Supp. 780, 791 (S.D.N.Y. 1988).  In this regard, the Second Circuit has approved disclosure of Rule 404(b) evidence as late as four days before, and even during, trial depending on the circumstances of the particular case.  See United States v. Valenti, 60 F.3d 941, 945 (2d Cir. 1995) (notice four days prior to trial sufficient where Government provided documents to defense on same day they were obtained).

In this case, no trial date has been scheduled, and the Government is still determining what specific evidence it will seek to introduce at trial pursuant to Rule 404(b). Accordingly, the Government respectfully submits that it will provide additional 404(b) notice at least ten working days (two weeks) before trial.  Such timely disclosure will enable the defense an opportunity to challenge the admission of any such evidence and the Court to make appropriate findings.

### E.    Statements Pursuant to Fed. R. Evid. 801(d)(2)

Angulo-Aguirre seeks an order directing the Government to disclose its intention to offer at trial any statements that would be admissible under Rule 801(d)(2) of the Federal Rules of Evidence.  See Angulo-Aguirre Pretrial Mot. 18.  To the extent

18

he seeks discovery of any statements he made that are covered by Rule 16 of the Federal Rules of Criminal Procedure, such statements have already been disclosed. To the extent he seeks discovery of statements by a co-conspirator in furtherance of the conspiracy, pursuant to Federal Rule of Evidence 801(d)(2)(E), discovery of such statements is not required by law, and Angulo-Aguirre's motion should be denied.

"Discovery of statements by alleged co-conspirators that the Government will seek to introduce pursuant to Fed. R. Evid. 801(d)(2)(E) is not required." United States v. Robles, No. 04 Cr. 1036 (GEL), 2005 WL 957338, at *1 (S.D.N.Y. Apr. 22, 2005); see also In re United States, 834 F.2d at 286 & n.2. Federal Rule of Criminal Procedure 16(a)(1)(A)-(B) specifies the statements that must be discovered to the defendant, but does not mention statements falling within the purview of Rule 801(d)(2)(E). Statements of non-testifying co-conspirators are therefore "not discoverable absent a requirement that they be produced under the Brady doctrine." United States v. Nachamie, 91 F. Supp. 2d 565, 578 (S.D.N.Y. 2000); United States v. Tochelmann, No. 98 Cr. 1276 (JFK), 1999 WL 294992, at *4 (S.D.N.Y. May 11, 1999) ("It is well settled that co-conspirator statements are not discoverable under Fed. R. Crim. P. 16(a) and (c) (governing governmental disclosure), and that such statements are not considered 3500 material under the Jencks

19

Act."). Moreover, "dispute concerning the admissibility of a
co-conspirator statement offered by the Government under Federal
Rule of Evidence 801(d)(2)(E) is to be resolved at trial and no
pre-trial ruling or conference is necessary." <u>Tochelmann</u>, 1999
WL 294992, at *4.

Here, because Angulo-Aguirre is not entitled to the
production pretrial of any statements covered by Rule
801(d)(2)(E), his motion should be denied.

### F.    **Identification Evidence**

Angulo-Aguirre requests additional information
concerning identification procedures that surrounded Government
witnesses' identification of (or failure to identify) the
defendant. <u>See</u> Angulo-Aguirre Pretrial Mot. at 9, 12-14. In
its July 12, 2007 letter to Angulo-Aguirre, the Government
provided the defendant with a photo array from which four
individuals identified the defendant's photograph. The
Government also informed the defendant that the two kidnapping
victims in this case were unable to identify the defendant's
photograph. No further disclosure is required.

"[I]dentity information regarding [] identification
witnesses should not be disclosed to defendants, because pre-
trial release of the identity of government witnesses and
informants is not required for the preparation of the defense,
particularly when balanced against the potential danger to these

witnesses . . . ."  United States v. Feola, 651 F. Supp. at
1147; see also United States v. Allen, 289 F. Supp. 2d 230, 241
(N.D.N.Y. 2003) (finding that Government's disclosure of
photographs to be used in prosecution and representation that it
was unaware of any failed identification of defendants was
sufficient to satisfy Rule 16); United States v. Santiago, 174
F. Supp. 2d 16, 32 (S.D.N.Y. 2001) (finding that the "weight of
authority in this District favors rejecting" a request for
"additional discovery that may support a suggestiveness
argument" regarding an identification procedure); United States
v. Marquez, No. 91 Cr. 451 (SWK), 1992 U.S. Dist. LEXIS 5247, at
*29 (denying defendant's Rule 16 request for "disclosure of
information regarding pretrial identification procedures"
because it "would be tantamount to the disclosure of a list of
the Government's witnesses and could require the disclosure of
3500 material," to which the defendant was not yet entitled).
"If the Government chooses to present identification evidence at
trial, defendants will have an ample opportunity at that time to
confront the witnesses against them."  Feola, 651 F. Supp. at
1147.

          Because the Government has already provided ample
information concerning the identification procedures in this
case, Angulo-Aguirre's motion for further discovery in this
regard should be denied.

### G.   Other Discovery Requests

Angulo-Aguirre also requests documents and tangible objects; documents relating to physical and mental examinations, scientific or laboratory tests or experiments; and warrants. See Angulo-Aguirre Pretrial Mot. 10.  To the extent those items are discoverable under Rule 16, they have already been provided, rendering those requests moot.

### III.   PLUTARCO ANGULO-AGUIRRE'S MOTION FOR DISCLOSURE OF INFORMANT-RELATED INFORMATION SHOULD BE DENIED

Angulo-Aguirre seeks discovery of personal and highly sensitive information about any Government confidential informants and cooperating witnesses, specifically, their names, dates of birth, social security numbers, criminal history, and present whereabouts, as well as any relevant files relating to the informants.  See Angulo-Aguirre Pretrial Mot. at 12, 15. Angulo-Aguirre has no right to such disclosure absent an unusual showing of need, which he has fallen far short of making.  His motion should accordingly be denied.

The "general and well-established rule is that the Government enjoys a 'privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law.'" United States v. Shamsideen, No. 03 Cr. 1313 (SCR), 2004 WL 1179305, at *11 (S.D.N.Y. March 31, 2004) (citing Roviaro v. United States, 353 U.S. 53, 59 (1957), and United States v. Jackson, 345 F.3d

22

59, 69 (2d Cir. 2003)). An exception to this general rule
exists only where "the defendant shows that discovery of the
witness's identity is material to the defense." United States
v. Robles, 2005 WL 957338, at *1 (citing United States v. Saa,
859 F.2d 1067, 1073 (2d Cir. 1988)).

        The defendant bears the burden of demonstrating that
he is entitled to the "extraordinary remedy" of disclosure.
United States v. Muyet, 945 F. Supp. at 602. It is not enough
for the defendant simply to show that the informant was a
participant in and witness to the crime charged. Saa, 859 F.2d
at 1073 (citing United States v. Jiminez, 789 F.2d 167, 170 (2d
Cir. 1986)); United States v. Brunson, No. 97 Cr. 398 (RSP),
1998 WL 146271, at *2 (N.D.N.Y. Mar. 26, 1998); United States v.
Castro, No. S 94 Cr. 809 (JFK), 1995 WL 6235, at *2 (S.D.N.Y.
Jan. 6, 1995). Nor can a defendant meet his burden by
speculating on the Government's case against the defendant, or
the informant's role therein. United States v. Fields, 113 F.3d
313, 324 (2d Cir. 1997) ("Speculation that disclosure of the
informant's identity will be of assistance is not sufficient to
meet the defendant's burden."). Rather, the defendant must make
an affirmative showing that "the disclosure of an informant's
identity . . . is relevant and helpful to the defense of an
accused, or is essential to the fair determination of a cause,"
Saa, 859 F.2d at 1067, and that, accordingly, the need for

23

disclosure of an informant's identity outweighs the Government's interest in anonymity.  Shamsideen, 2004 WL 1179305, at *11 (citing United States v. Fields, 113 F.3d 313, 324 (2d Cir. 1997)); United States v. Jimenez, 789 F.2d at 170 (disclosure not warranted where defendant produced no evidence that informant's testimony "would have been of even marginal value to the defendant's case").

Here, Angulo-Aguirre fails entirely to make the required showing.  Instead, Angulo-Aguirre offers mere speculation that disclosure of any informant's or cooperating witness's identity is material to the defense.  Angulo-Aguirre claims that he is entitled to disclosure because "it is believed that the CI's [sic] or cooperators would have relevant, admissible testimony to deliver which would negate the Government's claim that defendant participated in a conspiracy." Angulo-Aguirre Pretrial Mot. at 15.  In Saa, by contrast, the defendant made a specific showing that a particular informant's testimony would be material to the defense by pointing to particular events about which the informant might testify.  859 F.2d at 1073-74.  Angulo-Aguirre has not made any such showing here.  Accordingly, he has not met the substantial burden of rebutting the presumption of nondisclosure of any informant or cooperator's identity and other related information.

24

Because Angulo-Aguirre has neither identified any defense to which any informant's testimony might relate nor made a specific showing as to how any informant's testimony would be material to the preparation of his defenses, Angulo-Aguirre's motion for disclosure should be denied.

## IV.    PLUTARCO ANGULO-AGUIRRE'S MOTION TO PRECLUDE THE GOVERNMENT FROM IMPEACHING HIS CREDIBILITY WITH EVIDENCE OF PRIOR CONVICTIONS SHOULD BE DENIED

Plutarco Angulo-Aguirre moves, in boilerplate language, to preclude the Government from impeaching his credibility with evidence of prior convictions, pursuant to Federal Rule of Criminal Procedure 17.1 and Federal Rule of Evidence 609.  See Angulo-Aguirre Pretrial Mot. at 16-17.

Rule 609(a)(1) of the Federal Rules of Evidence provides that "evidence that an accused has been convicted of [a felony] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused."  Fed. R. Evid. 609(a)(1). Evidence of convictions for crimes involving "dishonesty or false statement" is admissible regardless of its effect and regardless of whether the crimes are misdemeanors or felonies. Id. 609(a)(2); see United States v. Hourihan, 66 F.3d 458, 464 (2d Cir. 1995).  Evidence of prior convictions is subject to a time limit of ten years from the later of the date of conviction or the date the defendant was released from confinement relating

25

to the conviction.  See id. 609(b).  Even convictions that are more than ten years old may be used for impeachment purposes, however, if "the probative value supported by specific facts and circumstances substantially outweighs its prejudicial effect." Id.

Motions to preclude impeachment with prior convictions are typically filed as motions in limine.  Angulo-Aguirre's motion should therefore be denied as premature.  See United States v. Campbell, No. 04 Cr. 903 (GEL), 2005 WL 1875774, at *3 (S.D.N.Y. July 26, 2005) (denying defendant's motion without prejudice as "premature, as there is currently no indication that the Government seeks to [cross-examine the defendant with his prior convictions, or introduce 404(b) evidence], and certainly no indication that the Government plans to do so in a way that violates Rules 404(b) and 609"); United States v. Garcia, No. 94 Cr. 1003 (LMM), 1996 WL 51197, at *3 (S.D.N.Y. Feb. 8, 1996).

## V.    PLUTARCO ANGULO-AGUIRRE'S MOTION TO COMPEL PRESERVATION OF LAW ENFORCEMENT NOTES SHOULD BE DENIED AS MOOT

Plutarco Angulo-Aguirre seeks an order requiring that law enforcement officers involved in the investigation of this case retain all notes and memoranda, regardless of whether the notes have been incorporated into formal reports, as well as initial drafts of any final reports.  See Angulo-Aguirre Pretrial Mot. at 9, 19-20.  The Government is aware of its

26

obligation to preserve discoverable evidence and to produce any notes of witness interviews that are not reflected in reports. The Second Circuit has held, however, that law enforcement officers need not retain their own handwritten notes after reducing them to formal reports.[4] United States v. Terrell, 474 F.2d 872, 877 (2d Cir. 1988).  The Government will nonetheless preserve any extant handwritten notes taken during witness interviews.  The defendants' motions should therefore be denied as moot.

## VI.  RODRIGUEZ'S MOTION TO SUPPRESS PHYSICAL EVIDENCE REQUIRES A HEARING, ASSUMING RODRIGUEZ SIGNS HIS AFFIDAVIT

Rafael Rodriguez moves to suppress physical evidence that was recovered from a car he was a passenger in on or about January 3, 2007, including a knapsack containing two guns,

---

[4] Although the Government is generally obliged to preserve handwritten notes made by agents during witness interviews, "this obligation is relieved when the agent makes a formal report based on his own notes." United States v. Solomonyan, 452 F. Supp. 2d 334, 356 (S.D.N.Y. 2006).  The Second Circuit has held that agents "need not preserve [handwritten] notes if the agents incorporate them into formal reports." United States v. Elusma, 849 F.2d 76, 79 (2d Cir. 1988); see also United States v. Barlin, 686 F.2d 81, 92 (2d Cir. 1982) (holding that the destruction of handwritten notes did not violate the Jencks Act when they had been incorporated into formal reports); United States v. Sanchez, 635 F.2d 47, 66 n.20 (2d Cir. 1980).  The Second Circuit "has several times held in varying contexts that the Jencks Act, 18 U.S.C. § 3500, imposes no duty on the part of law enforcement officers to retain rough notes when their contents are incorporated into official records and they destroy the notes in good faith." United States v. Anzalone, 555 F.2d 317, 321 (2d Cir. 1977) (internal quotation marks omitted).

ammunition, a black face mask, gloves, and plastic flex-ties. See Rodriguez Pretrial Mot. 5.

The Government notes that defendant Rodriguez has yet to sign the affidavit attached to his pretrial motion. A defendant moving for the suppression of evidence is not automatically entitled to an evidentiary hearing unless he supports his motion with "moving papers [that] are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question," United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992), including an affidavit of someone alleging personal knowledge of the relevant facts, see, e.g., United States v. Gillette, 383 F.2d 843, 848 (2d Cir. 1967). Rodriguez has not satisfied these requirements until his affidavit submitted with his motion is signed, thus signifying his endorsement of the assertions contained in the affidavit. The Government opposes a suppression hearing on Rodriguez's motion until his affidavit is signed.

If Rodriguez signs his affidavit, the Government consents to an evidentiary hearing on Rodriguez's motion, and anticipates that the evidence to be adduced at such a hearing will show that the search of the vehicle was justified by probable cause.

28

A search of a vehicle is valid if the searching
officers had probable cause to believe that the vehicle
contained contraband or evidence of a crime.  See United States
v. Gaskin, 364 F.3d 438, 456 (2d Cir. 2004) ("Under the
'automobile exception' to the Fourth Amendment warrant
requirement, police may conduct a warrantless search of a
readily mobile motor vehicle if probable cause exists to believe
the vehicle contains contraband or other evidence of a crime.");
see also United States v. Ross, 456 U.S. 798, 823 (1982) ("[A]n
individual's expectation of privacy in a vehicle and its
contents may not survive if probable cause is given to believe
that the vehicle is transporting contraband."); United States v.
Gagnon, 373 F.3d 230, 235 (2d Cir. 2004); see generally United
States v. Howard, 489 F.3d 484, 492 (2d Cir. 2007) ("The Supreme
Court has justified the automobile exception under two distinct
theories: First, the Court has noted that a person's expectation
of privacy in a vehicle is less than his or her expectation of
privacy in a home, and, second, the Court has held that because
a vehicle is readily moveable, exigent circumstances might
require a warrantless search.") (internal citations omitted).

        Probable cause to conduct a warrantless search of an
automobile exists "'where the facts and circumstances within . .
. [the officers'] knowledge and of which they had reasonably
trustworthy information [are] sufficient in themselves to

29

warrant a man of reasonable caution in the belief that' evidence of a crime will be found in the place to be searched. Further, courts recognize that experience and training may allow a law enforcement officer to discern probable cause from facts and circumstances where a layman might not." Gaskin, 364 F.3d at 456 (quoting Brinegar v. United States, 338 U.S. 160, 175-76 (1949)).

Additionally, "if probable cause justifies the search of a lawfully stopped automobile, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search," including "all containers within a car, without qualification as to ownership." Wyoming v. Houghton, 526 U.S. 295, 301 (1999) (emphasis in original); see also Florida v. Jimeno, 500 U.S. 248, 251 (1991); United States v. Gagnon, 373 F.3d at 235.

At the suppression hearing, the Government anticipates that the evidence will show that there was probable cause to justify a search of the car in which Rodriguez was a passenger.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny defendant Angulo-Aguirre's pretrial motions.  The Government consents to an evidentiary hearing on Rodriguez's motion to suppress evidence, assuming Rodriguez signs the affidavit attached to that motion before the date of the hearing.

Dated:    White Plains, New York
          September 6, 2007

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York

By: _____

Nola B. Heller
Assistant United States Attorney
(914) 993-1939

31

## AFFIRMATION OF SERVICE

NOLA B. HELLER, pursuant to Title 28, United States Code, Section 1746, hereby declares under the penalty of perjury:

That I am an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York.  That, on September 6, 2007, I caused copies of the Government's Memorandum of Law in Opposition to Defendants' Pretrial Motions to be delivered by ECF and Federal Express to:

    Michael F. Keesee, Esq.
    327 Irving Avenue
    Port Chester, NY 10573
and
    Paul P. Rinaldo, Esq.
    108-18 Queens Boulevard
    Forest Hills, Queens 11375

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated:    White Plains, New York
          September 6, 2007


                                   _____
                                   Nola B. Heller

32